UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JOHN SHELL, ) | |
| ) | |
| Plaintiff, ) | Civil No. 13-205-GFVT |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, Acting ) | **&** |
| Commissioner of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff John Shell brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying Shell's application for disability insurance benefits (DIB). The Court, having reviewed the record and for the reasons set forth herein, will DENY Shell's Motion for Summary Judgment [R. 12] and GRANT that of the Commissioner [R. 13].

I

Shell protectively filed an application for DIB on December 20, 2010, prior to his date last insured of December 31, 2010. [Transcript (Tr.) 146-47]. He alleges a disability beginning on January 24, 2005 due to Bipolar Disorder, attention deficit disorder (ADD), back injury, and knee injury. [Pl.'s Mot. Summ. J., R. 12-2 at 3]. Shell's application was denied initially [Tr. 73, 75] and upon reconsideration [Tr. 86, 88]. Subsequently, at Shell's request, an administrative hearing was conducted before Administrative Law Judge (ALJ) Anne Shaughnessy on May 14,

2012. [Tr. 24-47]. During the hearing, ALJ Shaughnessy heard testimony from Shell and vocational expert (VE) Mark A. Pinti. [Tr. 3-40, 40-45]. Shell, who was 60 years old at the time of the hearing, has a college education and has past work experience as a pharmacist. [Tr. 29, 161]. The VE testified that Shell could not perform his job as a pharmacist, but found that there are jobs that exist in significant numbers in the national economy that Shell could perform; the ALJ accepted that testimony. [Tr. 40-43].

Of particular import in this case, Shell previously applied for DIB on July 26, 2007, alleging a disability beginning on January 24, 2005, the same beginning date as alleged in the present case. [Tr. 10; 48]. That application was denied at the initial and reconsideration levels, and after a hearing, it was ultimately denied by Administrative Law Judge John Prince in a decision dated May 17, 2010. [Tr. 48]. ALJ Prince adjudicated Shell's disability claim for the period from January 24, 2005 through May 17, 2010, and found that Shell was not disabled. [Tr. 48]. The Appeals Council subsequently declined review of ALJ Prince's decision, and Shell did not appeal. [Tr. 10].

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

In this case, at Step One, ALJ Shaughnessy found that Shell has not engaged in substantial gainful activity since January 24, 2005, the alleged onset date, through his date last insured of December 31, 2010. [Tr. 14]. At Step Two, the ALJ found that Shell's ADD, Bipolar I disorder, back condition (disc space narrowing at L5-S1), and mild degenerative left knee condition constituted severe impairments. [*Id.*] At Step Three, the ALJ found that Shell's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. [Tr. 14].

At Step Four, the ALJ assigned Shell a residual functional capacity (RFC) with certain modifications, stating:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except for the following limitations. He can have only occasional contact with the public, supervisors, and co-workers. He has the ability to perform simple, detailed, and complex work. The work should involve the performance of routine tasks on a daily basis without constant changes in the work setting. The claimant has a mild impairment of the ability to engage in production-oriented tasks. He is not able to work as a member of a close-knit team. The work should have only occasional crawling.

[Tr. 16]. This RFC was adopted verbatim from the 2010 ALJ decision, since ALJ Shaughnessy

3

determined that that prior decision and its RFC determination were binding upon her adjudication. [*See* Tr. 11-12, 17-18]. Based on this RFC, the ALJ determined Shell could not perform any past relevant work. [Tr. 18]. However, at Step Five, ALJ Shaughnessy relied on the testimony of the VE to find that there are jobs that exist in significant numbers in the national economy that Shell could perform. [*Id.*] Accordingly, on July 20, 2012, the ALJ issued an unfavorable decision, finding that Shell was not disabled and was therefore ineligible for DIB. [Tr. 19]. The Appeals Council declined to review the ALJ's decision on September 19, 2013, [Tr. 1-3], and Shell now seeks judicial review in this Court.

II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (internal quotation marks and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the

4

Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Mullen*, 800 F.2d at 545.

Shell's two main arguments center around ALJ Shaughnessy's RFC determination. First, Shell argues that the ALJ's RFC determination was not supported by substantial evidence in the record and that the ALJ erred by adopting the RFC from the 2010 ALJ decision. He also contends that the ALJ's hypothetical question to the VE, which was based on the adopted RFC, was defective.

A

Shell's first argument regarding ALJ Shaughnessy's RFC analysis is two-fold. First, he contends that ALJ Shaughnessy erred by "rotely adopting" the RFC established in the 2010 ALJ decision. [Pl.'s Mot. Summ. J., R. 12-2 at 8]. Second, Shell argues that substantial evidence does not support the ALJ's RFC finding because the ALJ did not consider Shell's allegations or certain consultative opinions. [R. 12-2 at 7-10]. The Commissioner, on the other hand, argues that ALJ Shaughnessy was bound by the findings in the 2010 decision as res judicata and contends that substantial evidence supports the ALJ's conclusion that the new evidence offered by Shell did not warrant departing from the 2010 RFC determination. [R.13 at 4].

The principles of res judicata and collateral estoppel apply in social security proceedings after a trial type hearing before an ALJ. *E.g.*, *Drummond v. Comm'r of Social Sec.*, 126 F.3d 837, 841 (6th Cir. 1997). In *Drummond*, the Sixth Circuit held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous

5

ALJ." *Id.* at 842. The agency acquiesced in this ruling and restated *Drummond*'s precise holding as follows:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 1998 SSR LEXIS 5 (June 1, 1998).[2] In other words, in the absence of "changed circumstances," a prior ALJ's findings and determinations are binding on a subsequent claim – even if that claim stems from an as-yet unadjudicated period. *See* [Tr. 11]. The Court first considers the res judicata effect of the 2010 decision, then reviews the ALJ's "changed circumstances" analysis.

1

ALJ Shaughnessy first determined that the 2010 ALJ decision must be accorded res judicata effect. Shell's arguments on appeal, however, are based on the assumption that the 2010 decision was not binding on ALJ Shaughnessy.

As an initial matter, the parties disagree about the relevant "adjudicated" and "unadjudicated" time periods before ALJ Shaughnessy. Shell maintains that the period of disability at issue in this appeal runs from January 24, 2005 (Shell's initial allegation of disability) through December 31, 2010 (the date Shell was last insured). [Pl.'s Mot. Summ. J., R. 12-2 at 2]. The Commissioner contends that, since the 2010 decision was final and binding, the

---

[2] *Drummond* related to whether a prior finding must be accorded res judicata effect to bind *the Commissioner* in a subsequent claim. *Drummond*, 126 F.3d at 842. The principles of res judicata apply equally *against social security claimants* in the context of a prior denial of benefits, which is the circumstance in the present case. *E.g.*, *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993); *Cottrell v. Sullivan*, 987 F.2d 342, 344 (6th Cir. 1992).

only unadjudicated period before ALJ Shaughnessy was the period between May 18, 2010 (the day after the prior ALJ's decision) to December 31, 2010. [Def.'s Mot. Summ. J., R. 13 at 4].

The relevant unadjudicated period before ALJ Shaughnessy depends on the res judicata effect of the prior ALJ's decision. First, the 2010 ALJ decision is a final decision[3] arising under the same title of the Act (Title II, [Tr. 10]) and alleging the same facts as the present case. As such, ALJ Shaughnessy properly determined that, as to the period adjudicated in that decision, the 2010 ALJ decision must be accorded res judicata effect. [Tr. 10].

In turn, ALJ Shaughnessy determined that it was inappropriate to reopen the 2010 decision because there was no new and material evidence for the previously adjudicated period (January 24, 2005 to May 17, 2010). This discretionary agency decision is beyond the scope of a district court's judicial review, so this Court is without jurisdiction to review it. *Califano v. Sanders*, 430 U.S. 99, 100 (1977) (holding that, in the absence of a colorable constitutional claim, a district court lacks subject-matter jurisdiction to review "alleged abuses of agency discretion in refusing to reopen claims for social security benefits"); *Blacha v. Sec'y of Health & Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

Because she determined not to re-open the prior ALJ's determinations – which covered the period from of January 25, 2005 to May 17, 2010 and are accorded res judicata effect – ALJ Shaughnessy properly concluded that the unadjudicated period before her was between May 18, 2010 (the day after the prior ALJ's decision) to December 31, 2010 (the date Shell was last insured). [Tr. 12]. Shell frames his motion for summary judgment as one covering the entire period of his alleged disability, but he is not entitled to a second bite at the apple for a period that has already been adjudicated. *See Drummond*, 126 F.3d at 841 ("Decisions made by the

7

Administration cannot be repeatedly reconsidered."). In accordance with *Drummond*, ALJ Shaughnessy properly concluded that the RFC determination in the 2010 ALJ decision was binding on her RFC determination for the unadjudicated period – unless she found that Shell presented new or additional evidence of "changed circumstances." The Court takes up that "changed circumstances" determination in turn.

2

ALJ Shaughnessy determined that Shell had failed to present new and material evidence of changed circumstances for the unadjudicated period, and, therefore, the 2010 RFC determination was binding. As such, ALJ Shaughnessy adopted the 2010 determination that Shell had the RFC to perform a modified range of medium work. Shell argues that this medium-range RFC is not supported by substantial evidence. Specifically, he argues that the ALJ erred in discounting his own allegations and in failing to consider the 2007 medical opinions from Doctors Ray and Malpede. [*See* R. 12-2 at 8-10].

The RFC is the Commissioner's assessment of the most a claimant can still do, both physically and mentally, despite his limitations. *See* 20 C.F.R. § 404.1545(a)(1); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009). This decision is to be made by the Administrative Law Judge after reviewing the entire record. 20 C.F.R. §§ 404.1520(e); 416.920(e), 404.1545; 416.945; SSR 98-8. Relevant here, however, *Drummond* requires that a previous ALJ's findings and determinations are controlling in subsequent, unadjudicated periods unless there is new and material evidence or a showing of "changed circumstances." *Drummond*, 126 F.3d at 842; *see also* SSAR 98-4(6). The claimant bears the burden of "show[ing] that her condition so worsened in comparison to her earlier condition that she was

---

[3] The Appeals Council declined to review the 2010 decision, and Shell did not file any appeal. [Tr. 10].

unable to perform substantial gainful activity." *Priest v. Soc. Sec. Admin*, 3 Fed. App'x 275, 276, 2001 WL 92121, *1 (6th Cir. Jan. 26, 2001) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993)).

a

ALJ Shaughnessy determined that the new evidence presented by Shell – his own allegations and treatment records from his primary care doctor – did not show that his conditions had worsened or significantly changed. This conclusion is overwhelmingly supported by the record. First, the new evidence submitted by Shell reflects routine appointments with his primary care doctor, Victor Angel, D.O., between May 12, 2008 and August 1, 2011. [Tr. 307-40, Exhibit B10F]. The ALJ concluded that the brief notations in these records did not describe worsening conditions, but in fact show that Shell's mental conditions and physical health were improving between May 18, 2010 and December 31, 2010, the unadjudicated period at issue in this case. [Tr. 17]. For instance, ALJ Shaughnessy pointed out that in August 2010, Shell's ADD symptoms were "under control," [Tr. 17 (citing Tr. 297, Exhibit No. B9F)], and on December 23, 2010, Dr. Angel noted that Shell's concentration, focus, impulsivity, impatience, and hyperactivity were "all improved" [Tr. 17 (citing Tr. 295, Exhibit No. B9F)]. As the ALJ noted, these records do not reflect any alleged back or knee pain, nor do they document any problems with social interaction such as irritability, mood swings, and impulsive anger that Shell claims are disabling. [Tr. 17]. Aside from the information in his medical records, Dr. Angel offered no opinion evidence suggesting that Shell's condition had worsened. [Tr. 17 (citing Tr. 290-93)].

Further, as the ALJ noted, the State agency medical consultants who reviewed Shell's application for this period opined that Shell's physical and mental conditions were not severe

enough to prevent him from performing jobs that require medium work with some modifications. [Tr. 17, citing Tr. 87]. The ALJ's decision that Shell had failed to submit new and material evidence showing changed circumstances is supported by substantial evidence. As such, pursuant to *Drummond*, the ALJ did not err in adopting the 2010 RFC determination.

b

Shell argues that his own allegations were improperly rejected by the ALJ as lacking credibility, [R. 12-2 at 9], but this argument is unavailing. In determining whether a claimant is disabled, the Commissioner considers statements or reports from the claimant. 20 C.F.R. § 404.1529. To determine whether statements of a claimant are credible, an ALJ must employ the following two-part test:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)) (internal citations omitted). In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529; *see also, Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994). Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the credibility of claimant. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir.1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Id*. at 249.

ALJ Shaughnessy cited this test and expressly found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [Tr. 16]. The ALJ found that, under the applicable standard from *Drummond*, Shell's subjective statements did not suggest any "changed circumstances" from his date last injured. [Tr. 17]. Instead, they reflected essentially the same complaints as those considered in the 2010 decision. [*See* Tr. 17; ALJ Decision of May 17, 2010, Tr. 57-58]. The ALJ also noted that, despite Shell's characterization of the severity of his symptoms, Dr. Angel's treatment notes (discussed above) show that Shell's mental and physical conditions were improving – not worsening – during the unadjudicated period. [Tr. 17]. Further, as noted above, the ALJ pointed out that the new medical records are devoid of any documentation reflecting the social interaction issues or back and knee pain that Shell claims he experienced. [*Id.*] Given the dearth of "changed circumstances" in Shell's medical records, the ALJ's decision to discredit Shell's testimony was reasonable and was supported by substantial evidence.

c

Shell also argues that the ALJ's decision to adopt the May 2010 RFC determination is not supported by substantial evidence because she did not consider the opinions of consultative examiners Gary L. Ray, M.D., and Jayne M. Malpede, Ph. D. [Pl.'s Mot. Sum. J.., R. 12-2 at 9-10]. As to Shell's exertional limitations, Dr. Ray examined Shell on September 27, 2007 regarding his low back pain and knee pain. [Tr. 282-89]. He opined that Shell "[was] able to lift and carry up to 50 pounds occasionally and *20 pounds* frequently." [Tr. 284 (emphasis added)]. Shell highlights that this assessment precludes Shell from eligibility for medium work, which, as defined in the regulations, requires being able to carry *25 pounds* frequently. 20 C.F.R. § 404.1567(c). Because of this decreased exertional capacity, he argues that an RFC for medium work is inappropriate. [R. 12-2 at 9].

As to Shell's non-exertional limitations, Dr. Malpede diagnosed Shell with "bipolar disorder, depressed, severe without psychotic features," and with "opioid dependence, in remission." [Tr. 281]. Dr. Malpede opined that Shell's ability to withstand the stress and pressure associated with day-to-day work activity was "markedly impaired" by his symptoms. [Tr. 281]. Shell contends that this non-exertional limitation should also have been considered by ALJ Shaughnessy in reaching the RFC determination in this case. [R. 12-2 at 9-10].

Perhaps Shell's reliance on these doctors stems from his misconception that the case before ALJ Shaughnessy – and on appeal before this court – covers the full period of his alleged disability, dating back to 2005. [*See* Pl.'s Mot. Sum. J., R. 12-2 at 2]. But, again, Shell cannot relitigate the 2010 RFC determination that was binding on ALJ Shaughnessy. In reaching his decision in 2010, the prior ALJ expressly considered and weighed these doctors' opinions. [ALJ Decision of May 17, 2010, Tr. 54-55, 58]. Specifically, the prior ALJ formulated the RFC for

medium work with certain modifications after considering Dr. Ray's opinion that Shell could perform a "wide range of medium physical activity," and giving "some weight" to Dr. Malpede's assessment of Shell's non-exertional limitations. [ALJ Decision of May 17, 2010, Tr. 58].

ALJ Shaughnessy, however, was not required to consider – and indeed, was barred from considering – those opinions anew. Because she found that it was inappropriate to reopen the 2010 case, the ALJ could not reconsider these consultative opinions on their merits. *See, e.g.*, *Anderson v. Heckler*, 805 F.2d 801, 805 (8th Cir. 1986) (reconsideration of the merits of claimant's medical history can constitute de facto reopening). Moreover, both doctors' 2007 opinions pre-date the unadjudicated period at issue in this case. The opinions therefore do not represent "new and material evidence" required to remove the preclusive bar of res judicata, and it was not error for ALJ Shaughnessy to decline to include them in her "changed circumstances" analysis in Shell's subsequent claim. Accordingly, the ALJ's RFC determination as to Shell's unadjudicated period was proper under *Drummond* and is supported by substantial evidence.

B

Finally, Shell claims that the ALJ's hypothetical question to the VE was defective because the RFC upon which it was based failed to accurately portray his impairments as assessed by Doctors Ray and Malpede. As discussed above, ALJ Shaughnessy adopted the RFC determination from the 2010 decision, which provided for an RFC of modified medium work. The ALJ incorporated this RFC into the first hypothetical question that she posed to vocation expert Mark A. Pinti. [Hearing Transcript, Tr. 41-43]. Relying on the testimony of the VE, ALJ Shaughnessy found that although Shell's limitations precluded him from returning to his past work, there existed a significant number of jobs in the national economy that he could perform. [Tr. 18-19].

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (citing *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 239 (6th Cir. 2002); *Webb v. Comm'r of Soc. Sec.,* 368 F.3d 629, 633 (6th Cir. 2004)). While the hypothetical question need not exhaustively reference a claimant's medical conditions, "the ALJ must include in the question an accurate calculation of the claimant's residual functional capacity—i.e., a description of what the claimant can and cannot do." *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) (citing *Howard,* 276 F.3d at 239).

But the "inaccuracy" claimed by Shell simply harkens back to his earlier disagreement with the ALJ's RFC determination itself. His brief, one-paragraph argument to this effect simply reiterates that ALJ Shaughnessy's hypothetical question was flawed because it was based on an RFC that, he argues, erroneously failed to take into account the opinions of Doctors Ray and Malpede and erroneously "adopt[ed] the residual functional capacity assessed by Administrative Law Judge Prince in 2007 [sic]."[4] [R. 12-2 at 11].

As discussed above, however, the opinions of Doctors Ray and Malpede were considered by ALJ Prince when he made his decision in Shell's first claim in 2010. The binding nature of the 2010 decision, and the lack of any "new and material evidence" from these 2007 opinions, precluded ALJ Shaughnessy from considering – and, in turn, posing a hypothetical question reflecting – the assessments of these consultative examiners. For the same reasons noted above,

---

[4] ALJ Prince's decision was, in fact, rendered on May 17, 2010. [Tr. 48].

14

ALJ Shaughnessy's hypothetical question and the RFC determination on which it was based were not defective and were supported by substantial evidence.

III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

    (1)    Plaintiff's Motion for Summary Judgment [R. 12] is **DENIED**;

    (2)    Defendant's Motion for Summary Judgment [R. 13] is **GRANTED**; and

    (3)    **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 21st day of January, 2015.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge